AGNES SCHUNCK, AN INFANT, BY HER FRIENDS AND GUARDIANS, FREDERICK SCHUNCK AND JANET SCHUNCK, AND FREDERICK SCHUNCK AND JANET SCHUNCK, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS, v. CENTRAL RAILROAD COMPANY OF NEW JERSEY, DEFENDANT-APPELLANT.

Submitted May 2, 1933—Decided September 26, 1933.

Before Justices PARKER, LLOYD and PERSKIE.

For the plaintiffs-respondents, *Rosario S. Mazzola.*

For the defendant-appellant, *William A. Barkalow.*

The opinion of the court was delivered by

PERSKIE, J. This appeal brings up for review a judgment rendered by the court, sitting without a jury, against the defendant-appellant, hereinafter called the defendant, and in favor of the plaintiffs-respondents, hereinafter called the plaintiffs, in the sum of $350 ($300 in favor of the daughter and $50 in favor of the parents). The grounds of appeal are (1) that the court erred in not nonsuiting the plaintiffs at the end of plaintiffs' case; and (2) that the court erred in not rendering a verdict for the defendants and against the plaintiffs of no cause of action.

The proofs submitted disclose the following facts: On September 22d, 1931, plaintiff Agnes Schunck was a passenger on the train of the defendant's railroad company between Red Bank and the terminal of the defendant railroad at Jersey City, New Jersey. After plaintiff had alighted from the train and while walking on the concourse of the said terminal she discovered that she did not have her commutation ticket. She returned to the train upon being advised by a train caller and a conductor of the train that she had plenty of time to go back on the train to look for it. (Testimony of Agnes R. Schunk, direct):

"*A.* I turned around, and as I turned around, I saw this man—I believe he was the trainmaster—— *Q.* Train caller, do you mean? *A.* Train caller. He was standing there, and I said, 'listen, I lost my commutation ticket. Can I go back to track 20?' He said, 'yes, go ahead. You have time.' I immediately went right back. I passed two pullman. I was in the third car. I saw one of our conductors walking down and he looked rather queer at me, so I said, 'listen, I believe I lost my commutation ticket.' I said, 'I am looking around for it.' He said, 'O. K., plenty of time.' I walked and got in the third car after the two pullman about midway between them. I saw one of the brakemen lean over picking up newspapers. I said, 'listen, I am looking for my commutation ticket. Have you seen it?' He said, 'no.'"

Continuing her testimony, she says: "*A.* I walked through and I found the ticket in the seat where I sat. I picked up the ticket, took my time—didn't think there was any hurry, got into the door and placed my hand on the right rail, took one step, and the train moved and threw me off on the back of my head."

The defendants in support of its contention says that the railroad company had no reason to believe or to know that the young lady (plaintiff) had returned to the train, and, therefore, the only duty it owed her was to refrain from willful or wanton injury. *Bernardine* v. *Erie Railroad Co.,* 110 *N. J. L.* 338. The facts in the instant case do not, how-

ever, come within the facts of the *Bernardine* v. *Erie Railroad Co., supra,* because in that case the plaintiff boarded the train while at a standstill, not from the station platform provided by the railroad company but from the opposite side and the court therefore very properly (on page 342), said:

"There was no proof that any of the servants or agents of defendant saw the plaintiff approach the train from the wrong side and attempt to board it or that they saw him after he had reached the steps and ascended toward the platform, or that they knew or had reason to know that plaintiff was boarding or intended to board the train or was on the train or was in a situation in which a jerk of the train would be dangerous to him."

In the instant case all of the facts concerning the plaintiff's return to the train were known to the defendant, through its agents or servants.

The defendants further cite the case of *Trappnel* v. *Hines,* 268 *Fed. Rep.* 504. The Third Circuit Court of Appeals held:

"If the plaintiff was a passenger on a train of the defendant carrier the defendant owed him the duty to exercise for his safety every degree of care, diligence and skill which a reasonable man would use under the circumstances."

In that opinion the court also said: "* * * it is essential that the carrier have knowledge of the fact that the person intends to board the train; knowledge in this case being either actual or such as is charged to it by reason of the acts and conduct of the person and by such facts and circumstances as would reasonably inform and notify the carrier of the person's intention to board its train."

In the case at bar the testimony of the plaintiff was that several employes not only saw her approach the train but told her it was all right to board it.

And as irrefutable proof that the crew of the particular train in question did nothing to prevent the accident, the following questions and answers are submitted (testimony of Will Mahoney, conductor):

"*Q.* None of these doors are locked, are they, after the passengers are all discharged? *A.* No, they are not locked."

Harry Early, station master, testified as follows:

"*Q.* There are gates there? *A.* Yes. *Q.* Those gates are never closed until after the passengers are all discharged? *A.* They are. *Q.* They are? *A.* Not during the heavy commuters' hours. *Q. They weren't this morning, were they? A. No, sir.*"

There was, therefore, ample proof before the court to justify the finding that plaintiff received permission of the defendants, through its agents and servants, to return to the train; that the gates were open; that the doors of the train were open and that she informed the defendant of her mission. All of which distinguishes the instant case from the case of *Trappnel* v. *Hines, supra.* and which, in our opinion, justifies the following observation or statement by the court:

"Knowing that she was in the train and not making the slightest move to see what became of her, they failed in their duty, even in the duty of reasonable care, because there was the possibility of the woman going to the train, and the train crew, in ignorance of her presence, started that train. The trainmen did not know she was there, but the men who knew she was on the train should have done something to warn her or warn the engine crew not to start the train until she got off. That is where they failed."

The proofs submitted at the time of the making of the respective motions presented jury questions and were, therefore, properly denied.

Judgment is affirmed.